IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| **DEBRA TRENT, NICOLE TILLEY** ) | |
| **REBECCA SUE HINES,** ) | |
| **ROBINA JORDAN, ELIZABETH ABE,** ) | |
| **SARAH LONG, SHARON ALLEN, and** ) | |
| **JUNE ERWIN** ) | |
|       **Plaintiffs,** ) | |
| **v.** ) | Civil Action No: 2:21-cv-280 |
| ) | |
| **VIRGINIA DEPARTMENT** ) | |
| **OF ENVIRONMENTAL QUALITY** ) | |
| ) | |
|       **Defendant.** ) | |

**COMPLAINT UNDER THE EQUAL PAY ACT**

This is an action alleging violation of the Equal Pay Act of 1963, to restrain payment of wages to employees of one sex at rates less than the rates paid to employees of the opposite sex, and to collect back wages due to employees as a result of such unlawful payment. When the Commonwealth came to understand in 2019 that the long-standing policy of using pay history to determine a new hire's salary was a biased policy, nothing was done to address the inequity endured by veteran women at the Virginia Department of Environmental Quality ("DEQ"). Plaintiffs ask the Court to enjoin unlawful compensation discrimination and order wages equal to those paid to their male counterparts for performing equal work.

**JURISDICTION AND VENUE**

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, and 1343. This action is authorized and instituted pursuant to Sections 16(b) of the Fair Labor Standards Act of 1938 (the "FLSA"), as amended, 29 U.S.C. §§ 216(b) to

1

enforce the requirements of the Equal Pay Act of 1963 ("the EPA"), codified as Section 6(d) of the FLSA, 29 U.S.C. § 206(d).

2. Venue is proper within the United State District Court for the Eastern District of Virginia, Norfolk Division, inasmuch as Defendant conducts substantial business in this District and Division and a substantial part of the employment events or omissions giving rise to the claims occurred in the judicial district and division. Debra Trent is a resident of Virginia Beach, Virginia. 28 U.S.C. §§ 1391; Eastern District Rule 3(C).

**PARTIES**

3. Debra J. Trent received a Bachelor of Science degree in Biology from Longwood College and took Advanced Study in Public Administration and Aquatic Ecology at VCU. She began her employment with DEQ in November 1997 when she joined the Office of Environmental Research and Standards within the State Water Control Board at a starting salary of $40,839. In her Employee Work Profile ("EWP") dated November 1, 2018, her Role Title & Code was Environmental Specialist II (ESII), her Mapped Title was ESII – Senior II, and her Work Title was Solid Waste Inspector Senior II. She works in the Virginia Beach office. Her professional experience in water protection programs is extensive and she has been called upon to develop Solid Waste Inspection Modules and provide technical guidance for the Pilot Project for Reuse of Food Waste for the City of Newport News. She is 40 Hour and 8 Hr. OSHA Hazardous Material Responder Certified. Her job duties include providing technical guidance to staff, the regulated community, and the public, cooperating with staff on issues related to compliance, permitting and enforcements, conducting inspections of solid and hazardous waste

management facilities, performing financial assurance, groundwater monitoring and other permit specific monitoring and reporting reviews, preparing inspection reports, entering evaluation and enforcement data into CEDS and RCRAInfo databases, initiating enforcement actions, conducting research, taking information on and investigating complaints, and directing abatement, enforcement, or referral action to ensure that monitoring effects and documentations are consistent within time frames established.

4. Nicole Tilley received a Bachelor of Science degree in Mathematics with a Minor in Chemistry from Hollins University. She began her employment with DEQ in January 2016 at a starting salary of $45,000. In her EWP dated January 23, 2020, her Role Title & Code was ESII, her Mapped Title was Inspection Senior – Waste, and her Work Title was Solid and Hazardous Waste Inspector. She works in the Blue Ridge Regional Office in Salem, Virginia. Her job duties include inspecting solid waste management facilities to assess compliance with environmental laws, regulations and specific permit provisions, performing permit specific monitoring, preparing inspection reports, providing technical and compliance assistance, initiating and conducting appropriate enforcement actions, providing advice and support to other members of the waste compliance and enforcement team, collaborating with permitting staff, and responding to and investigating reports of improper waste management.

5. Rebecca Sue Hines received extensive environmental training during her twenty years of active duty in the Air Force and has previous positions as an Environmental Technician and a Hazardous Materials Specialist. She began her employment with DEQ in May 2006 at a starting salary of $49,350. She had previously been an Environmental Technician and Hazardous Materials Specialist and had served in the Air Force on active

duty for 20 years. In her EWP dated November 1, 2019, her Role Title & Code was ESII, her Mapped Title was Air Emissions Coordinator Senior, and her Work Title was Point Source Emissions Specialist. She works in the Central Office in Richmond, Virginia. Her job responsibilities include inventory procedures, guidance documents, presentations and training, and serving as liaison to the federal Environmental Protection Agency.

6. Robina Jordan received a Bachelor of Science degree in Environmental Science with a minor in Biology from Memphis University. She began her employment with DEQ in November 1997 at a starting salary of $33,991 and ended her employment with DEQ in August 2017. In her EWP dated November 1, 2016, her Role Title & Code was ESII, her Mapped Title was Inspector Senior II – Air, and her Work Title was Air Compliance Specialist. She last worked in the Blue Ridge Regional Office in Roanoke, Virginia. Her job duties included administering the Emissions Inventory/Fee Program and Coding Process, database management, conducting inspections, investigating complaints, and preparing permits.

7. Elizabeth C. Abe received a Bachelor of Arts in Merchandising from Virginia Commonwealth University and a Master of Science degree in Landscape Architecture from Virginia Polytechnic Institute. She began her employment at the Virginia Department of Conservation and Recreation (DCR) as a Storm Water Compliance Specialist in 2005 and with DEQ in June 2013 at a starting salary of $47,960. In her EWP dated November 1, 2019, her Role Title & Code was ESII, her Mapped Title was Inspector Senior – Stormwater, and her Work Title was Stormwater Compliance Specialist. She works in the Blue Ridge Regional Office in Salem, Virginia. She is responsible for the Erosion Sediment Control (ESC) and Stormwater Management (SWM) programs. She

4

maintains dual combined administrator certifications in both ESC and SWM and implements the Construction General Permit, including Plan Review Procedures.

8. Sarah Long received a Bachelor of Science degree in Agricultural and Applied Economics from Virginia Tech. She began her employment with DEQ in August 2012 at a starting salary of $43,680 and ended her employment with DEQ in July 2020. In her EWP dated November 1, 2019, her Role Title & Code was ESII, her Mapped Title was Permit Writer/Inspector – OLAP, Senior, and her Work Title was Biosolids Specialist. She last worked at the Rockingham County office. Her job duties included conducting inspections of biosolids land application activities, conducting compliance and inspections, processing permits, receiving, reviewing, and filing permittee reports, and providing support and technical assistance to agency programs and the public. At the end of her employment with DEQ, she performed GIS mapping.

9. Sharon Allen received a Bachelor of Science degree in Wildlife Resources from West University Virginia. She also studied for two years at the United States Department of Agriculture Graduate School and has certification in Erosion Control Inspection. She began her employment with DEQ in June 2005 at a starting salary of $41,000. In her EWP dated November 1, 2019, her Role Title & Code was ESII, her Mapped Title was Inspector Senior II – Tank, and her Work Title was Petroleum Storage Tank Compliance Inspector. She previously worked as a Water Compliance Inspector at DEQ. She works in the Northern Regional Office and lives in Manassas. Her job duties include conducting UST inspections, performing tasks related to information management, compliance, and enforcement, and preparing closure reports.

10. June R. Erwin has studied at Northern Iowa Community College, the University of Arkansas, the University of Maryland, Lawton University, and Northern Virginia Community College. She began her employment with DEQ in March 2005 at a starting salary of $25,000. In her EWP dated November 1, 2019, her Role Title & Code was ESII, her Mapped Title was Inspector Senior – Tank, and her Work Title was Petroleum Storage Tank Compliance Inspector. She works in the Northern Regional Office. Her job duties include conducting UST inspections, performing tasks related to information management, compliance, and enforcement, and preparing closure reports.

11. At all relevant times, Defendant the Virginia Department of Environmental Quality ("Defendant" or "DEQ") has been a department of the Commonwealth of Virginia. DEQ was established to protect and improve the environment for Virginians. DEQ administers state and federal laws and regulations for air quality, water quality, water supply and land protection.

12. In addition, DEQ programs cover a variety of environmental activities, such as improving the ability of businesses and local governments to protect the environment and offering technical and financial assistance for air and water quality improvements. Through its six regional offices, DEQ issues permits, conducts inspections and monitoring, and enforces regulations and permits.

13. At all relevant times, Defendant has continuously been a public agency within the meaning of Sections 3(x) of the FLSA, 29 U.S.C. § 203(d).

14. Defendant's regional offices are operated by a central administrative headquarters at 1111 East Main Street, Richmond, and all matters of hiring and salary are

6

determined at such headquarters for all offices of DEQ. DEQ operates as a single establishment statewide.

15. At all relevant times, Defendant has acted directly or indirectly as an employer in relation to the named employees and has continuously been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

16. At all relevant times, Defendant has continuously employed employees engaged in the regulation of commerce within the meaning of Sections 3(b), (i), and (j) of the FLSA, 29 U.S.C. §§ 203(b), (i), and (j).

17. At all relevant times, Defendant has continuously been an enterprise engaged in commerce within the meaning of Sections 3(r) and (s) of the FLSA, 29 U.S.C. §§ 203(r) and (s), said enterprise has continuously been a public agency with regulatory powers affecting interstate commerce.

18. Each of the eight Plaintiffs are or were employed in the role designated by DEQ as Environmental Specialist II.

19. Each Plaintiff was assigned the specific core responsibilities of environmental inspectors in accordance with Virginia and federal regulations and DEQ policies.

20. Each Inspector is responsible for the inspection of waste management facilities in the Commonwealth, to investigate complaints, to ensure enforcement, to document and report findings, to track compliance issues, to observe facility emissions, to evaluate programs, and to provide technical support, all with the goal of effective environmental management.

## VIOLATION OF THE EPA

21. Starting earlier than April 1, 2017, and continuing to July 1, 2019, Defendant has violated Sections 6(d)(1) and 15(a)(2) of the FLSA, 29 U.S.C. §§ 206(d)(1) and 215(a)(2), by paying Plaintiffs lower wages than those paid to their male colleagues for performing equal work as Environmental Specialist II, inspectors, all being classified full-time employees.

22. Trent was worked for DEQ since 1997; Tilley since 2016; Hines since 2006; Jordan since 1997; Abe since 2004; Long since 2012; Allen since 2005; and Erwin since 2005. Each worked a considerable portion of her career at DEQ when DEQ would use the compensation policies described herein as violating the EPA.

23. The Commonwealth's Department of Human Resource Management ("DHRM") has Commonwealth-wide responsibility for promulgating compensation policy for state employees, including those employed at DEQ.

24. Through July 1, 2019, salary offered to each woman by a prior employer, regardless of its bias, was used to determine her starting pay at DEQ, without consideration of whether such prior salary reflected the needs of the DEQ job.

25. The Attorney General of Virginia, Mark R. Herring, addressed the issue of "previous salary" or "salary history" in a Brief submitted by Virginia as an Amicus, in *Greater Virginia Chamber of Commerce v. City of Philadelphia*, United States Court of Appeals for the 3rd Circuit, Nos. 18-2175, 18-2176, filed September 28, 2018. The Attorney General submitted to the Court that a "persistent gender wage gap is the continuing result of gender discrimination in the workplace---and employers' use of salary

history in setting wages perpetuates the gap further still." *Id.* at Docket 3113047629, at page 10.

26. Further, the Attorney General maintained that salary history is not a gender-neutral measure of an individual's value to the employer; that an individual's past salary may reflect intentional discrimination, unconscious bias, or systematic undervaluing of work performed by women. *Id.* at page 16. General Herring asserted that to justify a wage differential on the basis of salary history is entirely inconsistent with the Equal Pay Act's goal of eradicating pay discrimination reflecting gender-based disparities. *Id.* at page 19.

27. On June 12, 2019, Governor Ralph S. Northam announced to his Cabinet Secretaries the implementation of his Employment Equity Initiative, "taking steps that are long overdue to ensure that our processes are free of unconscious bias."

28. On June 20, 2019, the Governor announced to State Employees that the State Compensation Policy would change, a reform that "will eliminate provisions that base starting pay and future salary adjustments solely on previous or existing salary."

29. Effective July 1, 2019, DEQ discontinued its discriminatory practice by making changes in the DHRM Compensation Policy 3.05.

30. However, no action was taken, in the aftermath, to remedy the wage disparity suffered and endured by women hired and employed as Environmental Specialists II in the many years *prior to July 1, 2019*.

31. Plaintiffs when hired were each required to disclose prior employment and prior salaries on their DEQ job application forms.

32. DEQ utilized the prior salary data to fix a starting salary for each female employee and similarly, for male employees.

33. Starting salary has a career impact: a state employee starting low in salary when compared to her male peers never catches up.

34. Use of prior salaries reinforces, redoubles and replicates years of historic salary discrimination against female workers.

35. Prior salary information is not reflective of an employee's knowledge, skills, or abilities, nor his or her value to DEQ; rather, prior salary information reflects the value placed by another employer on the employee's performance of another job at another time and place and situation.

36. DHRM also has policy to deal with the possibility that state employees would receive offers of employment by other competitor employers for their services.

37. Such offers could be offers from the private sector, the public sector, the federal government, another Virginia agency, or the agency of another State or nation.

38. Receipt of such offers of employment reflects the subject employee's relevant contacts achieved by networking, for example; male employees, long employed in this field, are at an advantage over females.

39. DEQ has the following policy to the salaries of male putative comparators in this litigation:

> *Competitive Salary Offer.* When an employee receives an outside higher salary offer, and the employee is deemed critical to the agency's mission and on-going operations, the division director may request that the agency make a competitive offer. The outside employment offer must be in writing and can be from another State agency (Internal Competitive Salary Offer) or an organization external to the Commonwealth (External Competitive Salary Offer). In the case of an Internal Offer, the division director can only make one counter offer for a job with a higher salary within the same or higher pay band, and the amount must be approved by Human Resources before being extended to the employee. Any offer exceeding $5,000.000 (sic) must be approved by the Agency Head or his designee. The amount

of the offer may not exceed the amount of the job offer from the other agency or the maximum salary of the pay band.

(DEQ015285, DEQ Salary Administrative Plan (7th page)).

40. DEQ has not maintained records which include the written offer.

41. A prospective employer assesses *his job* and how the new employee would aid *his company* and offering a salary based upon that assessment.

42. DEQ policy requires that a male employee receiving an outside offer must be "deemed critical to the agency's mission and on-going operations" before it is met or countered, and Plaintiffs dispute that such determinations were made by DEQ.

43. The salary offers from other employers are extraneous to the duties, responsibilities, and efforts needed to perform the DEQ job; such offers are not job-related.

44. For these and other reasons, such offers are potentially affected by considerations of gender and DEQ is not entitled to use "Competitive Salary Offer," "Competitive Pay Offer," "Competitive Voluntary Transfer," or any similar event as a factor as would entitle a male to increased salary or explain the salary disparity between the male and a comparatively situated Plaintiff.

45. As a result of the acts complained of above, and for other reasons, Defendant unlawfully has withheld and is continuing to withhold the payment of wages due to all such female employees who received lower compensation than their male colleagues. The practice necessarily allowed DEQ to pay wages to females at their start and throughout their careers at less than the rates paid to male employees in the same establishment for substantially equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.

46. The unlawful practices complained of in the paragraphs above were willful.

11

47. The past salary or the competitive job offer of a job applicant cannot be an "other factor other than sex" when used alone *or in combination with job-related factors to fix her new salary*.

48. Eight individual Inspectors are joined in this civil action given that 1) they have essentially the same job with the same employer; 2) similar hiring policies and similar hiring occurrences started each of their careers at DEQ at a lower salary than appropriate; 3) males have been identified as valid comparators to each of the eight and there are individual males who are common comparators; 4) DEQ is the common employer of all eight Plaintiffs and compensation policies as described in the Complaint applied to all of the eight women and to their male comparators; 5) the legal issue of whether "past salary" or "salary history" is valid and job-related and may be used by an employer to explain disparity is common; 6) the legal issue of whether competitive transfer offers may be used as a job-related justification to explain salary disparity is common; and 7) fairness to the parties and the efficient administration of their dispute with DEQ are furthered by joinder in a single complaint through trial.

49. The Plaintiffs assert their claims for compensation grounded in each experiencing an initial salary transaction and each enduring disparate pay when compensation policies were applied; such compensation policies were not based on job-related criteria.

50. Common questions of law appear in the questionable validity of the use of such compensation policies to effectuate a pay disparity between male and female employees doing equal work at DEQ, in light of the goals and purposes of the Equal Pay Act.

**PRAYER FOR RELIEF**

Wherefore Plaintiffs respectfully request that this Court:

A.  Restrain any discrimination or retaliation against persons who seek to participate as claimants or witnesses in this matter.

B.  Grant a permanent injunction enjoining DEQ, its officers, successors, assigns, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from discriminating within any of its establishments between employees on the basis of sex, by paying wages to employees of one sex at rates less than the rates at which it pays wages to employees of the opposite sex for substantially equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions. Specifically, enjoin the policy of using Competitive Salary Offers to enhance employee pay.

C.  Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for women and which eradicate the effects of its past and present unlawful employment practices.

D.  Grant a judgment requiring Defendant to pay appropriate back wages in amounts to be determined at trial, an equal sum as liquidated damages, and prejudgment interest to Plaintiffs whose wages are being or were unlawfully withheld as a result of the acts complained of above, female employees paid lower compensation than their male counterparts for performing equal work. Compensation should include amounts to remedy the diminishment of the value of the retirement programs (through the Virginia Retirement System and Federal Social Security) caused by disparate salaries.

E.	Award the Plaintiffs' costs and expenses of this action, including any necessary expert witness fees, along with reasonable attorney's fees for their legal counsel as provided by statute.

F.	Grant such further relief as the Court deems necessary and proper in the public interest, under the Equal Pay Act.

## JURY DEMAND

Plaintiffs request jury trial on all issues of fact.

Respectfully Submitted,

**DEBRA TRENT,
NICOLE TILLEY,
REBECCA SUE HINES,
ROBINA JORDAN,
ELIZABETH ABE,
SARAH LONG,
SHARON ALLEN,
and JUNE ERWIN**


	*/s/ Sydney E. Rab*
Sydney E. Rab, Esquire (VSB #15105)
The Rab Law Firm
5407 Langdon Drive
Richmond, Va. 23225
Tele: 804-822-8981
Msydrab@comcast.net


	*/s/ Tim Schulte*
Tim Schulte (VSB #41881)
Blackwell N. Shelley, Jr. (VSB #28142)
Shelley Cupp Schulte, P.C.
3 West Cary Street
Richmond, Va. 23220
(804) 644-9700
(804) 278-9634 [fax]
schulte@scs-work.com
shelley@scs-work.com

       */s/ Timothy E. Cupp*
Timothy E. Cupp (VSB #23017)
Shelley Cupp Schulte, P.C.
1951 Evelyn Byrd Avenue, Suite D
Harrisonburg, VA 22803
(540) 432-9988
(804) 278-9634 [fax]
Cupp@scs-work.com

*Counsel for Plaintiffs*